IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVIER G.,[1] | ) |
| | ) |
| Plaintiff, | ) No. 22 C 3086 |
| | ) |
| v. | ) Magistrate Judge Jeffrey Cole |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, almost three years ago in July of 2020. (Administrative Record (R.) 224-25). He claimed that he had been disabled since July 26, 2019 (R. 224) due to: "Schizophrenic with past hospitalizations, Severe psychotic disorder, Severe depression, Poor memory, HBP, High cholesterol, Medication side effects, Bipolar, Cognitive impairment." (R. 256). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on June 13, 2022, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on June 16, 2022. [Dkt. ##7, 8]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

Plaintiff was born on November 18, 1966 (R. 224), so he was 52 years old when he claims he became unable to work. He worked steadily from 1996 through 2017 as a warehouse manager for an auto parts company. (R. 258, 226-27). That work involved lifting up to 40 pounds, carrying 25 pounds, walking 2 hours, standing 4 hours, and sitting 4 hours. (R. 258). The plaintiff has been suffering from depression for years, since his parents died four months apart in 2005. (R. 1094).

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: schizoaffective disorder, bipolar disorder, schizophrenia, and history of neuroleptic malignant syndrome. (R. 34). The ALJ said the plaintiff also had a number of other impairments – obesity, diabetes, hypertension, and hyperlipidemia – that did not amount to severe impairments. (R. 34-35). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings 12.03, 12.04, 12.06, and 12.08. As for plaintiff's limitations due to his mental impairments, the ALJ found the plaintiff had a mild limitations in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 35-38).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform work at all levels, albeit with a constellation of additional limitations:

>  the [plaintiff] cannot operate motor vehicles for work purposes. He must avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery. The [plaintiff] can understand, remember, carry out and sustain no more than routine tasks and not complex tasks, performing the same tasks day in and day out with no contact with the public for work purposes and no more than occasional contact with coworkers and supervisors for work purposes. He cannot engage in teamwork situations, where he has to work with others to complete the same job task(s), but can work independently. The [plaintiff] cannot perform work where a machine sets the pace of work. He is limited to work where performance is measured by what is completed by the end of the workday.

(R. 38). The ALJ then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 39). The ALJ then reviewed the plaintiff's course of treatment. She noted that findings were generally normal, that plaintiff was consistently noted to be "psychiatrically stable", and that his schizoaffective disorder was in remission." (R. 39). She also noted there was no evidence of mental health treatment from May 2020 until February 2021, and that the results of a consultative exam in December 2020 did not suggest plaintiff was more limited than the residual functional capacity the ALJ found. (R. 39). When plaintiff re-established care in 2021, he said he was functioning well and that his symptoms were mostly controlled with medication. (R. 40). The ALJ added that the record failed to support the existence of any exertional or physical limitations. (R. 40). Then the ALJ went through plaintiff's allegations, comparing them to the record, and explaining any accommodations she felt were warranted. (R. 40-41).

As for medical opinions, "[o]verall" the ALJ found that the opinions from the state agency reviewing psychologists "were generally persuasive, as they [were] supported by and consistent with

3

the record as a whole." But the ALJ adopted additional limitations due to side effects from plaintiff's medications. The ALJ accommodated the limitations the psychologists found by limiting plaintiff to "routine tasks, but not complex tasks, performing the same tasks day in and day out, with no work where a machine sets the pace of work and where performance is measured by what is completed by the end of the work day, "prohibiting teamwork situations where the [plaintiff] has to work with others to complete the same job task, . . . limiting the claimant to no more than occasional contact with coworkers and supervisors, . . . [and] prohibiting contact with the public for work purposes." The ALJ adopted the opinions of the state agency reviewing physicians as they were "supported by and consistent with the record, including with the claimant's consistently normal physical examinations." (R. 42). The ALJ rejected the opinions from Dr. Spishakoff that plaintiff met listings 12.06 and 12.08 and cannot manage funds because they were not explained or supported with treatment notes. (R. 42-43). The ALJ also rejected statement from the doctor that plaintiff could work part time for similar reasons. (R. 43-44).

The ALJ then found that plaintiff was unable to perform his past relevant work as a warehouse worker or industrial truck driver, based on the testimony of the vocational expert. (R. 44-45). The ALJ then further relied on the testimony of the vocational expert that plaintiff could perform other work that existed in significant numbers in the national economy: cleaner (D.O.T. #323.687-014; 193, 892 jobs); collator operator (D.O.T. #208.685-010; 42,737 jobs); and router (D.O.T. #222.587-038; 31,666 jobs). (R. 46). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 46).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *1 (7th Cir. Oct. 11, 2022); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in

his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

     Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[2] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*,

---

[2] By way of example, in the Seventh Circuit's recent ruling in *Jarnutowski*, 48 F.4th 769, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

6

516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3]

---

[3] Prior to Sarchet's "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

7

**III.**

The plaintiff raises three arguments in support of his motion to remand the ALJ's decision denying him benefits. First, the plaintiff argues that the ALJ failed to adequately analyze the side effects of his medications. Second, the plaintiff says that there must be an updated medical record review of whether his schizophrenic disorder meets or equals Listing 12.03. And, finally, the plaintiff contends that the ALJ erred in not including in the current application the evidence from the adjudication of plaintiff's previous claim for benefits. Any other arguments he might have raised are, of course, deemed waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

**A.**

First, the plaintiff argues that the ALJ failed to adequately analyze the side effects of his medications. As the plaintiff reads the ALJ's Opinion, all the ALJ said on the topic was: "However, the medical record does not document the medical necessity for taking naps during the typical workday…." [Dkt. # 13, at 8]. But, a review of the record and the ALJ's Opinion show that the plaintiff's counsel is engaging in a bit of what plaintiffs' Social Security lawyers frequently accuse ALJs of doing: cherry-picking.

Plaintiff, his wife, and his brother-in-law all claimed that plaintiff is sleepy or drowsy during the day. In his March 2, 2021 statement, plaintiff wrote that his medications made him sleepy, and he took two naps a day. (R. 297, 303). His wife wrote in her August 17, 2020 third-party statement that after waking up and eating, her husband took his medications and was drowsy for the rest of the day, taking two long naps. (R. 265). In his March 5, 2021 third-party statement, plaintiff's brother-in-law wrote that plaintiff was always tired and wanted to sleep most of the time. (R. 306, 310).

8

And, finally, at his telephonic administrative hearing on September 16, 2021, the plaintiff claimed that he takes two two-hour naps during the day. (R. 59, 67).

But, as the ALJ suggests [Dkt. #41], these are just allegations, and allegations are not enough. SSR 16-3P, 2017 WL 5180304, at *2. If it were otherwise, every plaintiff in every Social Security case would prevail. It is the plaintiff's burden to prove he or she is disabled by providing medical evidence beyond the mere claims. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) ("But subjective complaints are the opposite of objective medical evidence...."); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, ...."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). A plaintiff has to go beyond claiming they have to nap every day because of their medication. *See, e.g., McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018)("Further, the mere listing of side effects is insufficient to establish functional limitations, and no evidence shows how McHenry's medications affected her ability to work.").

The plaintiff claims that the "medical record did document . . . that Plaintiff in fact went to sleep during the day from his medications from at least April 30, 2019, to August 4, 2021." [Dkt. #13, at 8]. That's a bit of a stretch. The record does include some instances when plaintiff reported sedation due to his medication, and his medication regimen needed to be adjusted. (R. 735, April 30, 2019 ("Move all depakote to QHS as patient complains of sedation from daytime dosing."); R.

9

745, May 28, 2019 ("Increase ziprasidone 60 mg at bedtime – patient has not tolerated morning does in the past . . . due to excessive sedation the next day."); R. 760, June 10, 2019 ("Decrease ziprasidone 40 mg at bedtime - patient had not tolerated Higher doses . . . due to excessive sedation . . . ."); R. 785, July 22, 2019 ("Stable with medication. Will discontinue doxepin at bedtime due to excessive sedation as patient sleeping up to 15 hours a day.")). But, as the ALJ noted, these adjustments seemed to work and on September 9, 2019, plaintiff denied any tiredness. (R. 789). Similarly, plaintiff had no complaints of tiredness on November 4, 2019 (R. 808) and January 6, 2020. (R. 829).

There are no records of treatment from May 2020 to February 2021; plaintiff's previous mental healthcare provider retired. (R. 1088, 1094). When plaintiff re-established treatment in February 2021, he said he had been functioning well, that his symptoms were well-controlled with medication, and a low level of care was recommended. (R. 1092, 1094). Thereafter, he told his doctors that he had no side effects from medication on July 21, 2021 (R. 1112), August 4, 2021 (R. 1117), August 18, 2021. (R. 1124). So, contrary to plaintiff's take on the evidence, the medical record certainly does not document that plaintiff slept during the day from April 30, 2019, to August 4, 2021. His own reports to his doctors undermine that claim.

As is often the case, then, the record here allows for more than one interpretation. Plaintiff seems to have lost sight of the fact that the ALJ's decision denying benefits need only be supported by "substantial evidence," which need not even amount to a preponderance of evidence. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007). "[T]he presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus*, 994 F.3d at 903. Again, where reasonable minds

could differ as to the perception of the evidence, the court defers to the ALJ's view, not the plaintiff's. *Karr*, 989 F.3d at 513; *Zoch*, 981 F.3d at 602. There is obviously *at least* "substantial evidence" to support the ALJ's take on plaintiff's daytime napping. And, importantly, the ALJ did not ignore the plaintiff's allegations or his reports to his doctors. Indeed, the ALJ explained how she accommodated plaintiff's claimed lack of energy in formulating her RFC:

> in consideration of the claimant's complaints of low motivation and low energy, the undersigned has limited him to understanding, remembering, carrying out and sustaining no more no more than routine, but not complex, tasks, performing the same tasks day in and day out with no work where a machine sets the pace of work and where performance is measured by what is completed by the end of the workday.
> \* \* \*
> Nevertheless, the undersigned considered the claimant's reported fatigue in limiting him to routine, but not complex, tasks, performing the same tasks day in and day out, with no work where a machine sets the pace of the work and where performance is measured by what is completed at the end of the workday. The record as a whole fails to support greater functional limitation.
> \* \* \*
> Nevertheless, as a safety precaution, and in consideration of the claimant's subjective complaints, the undersigned limited the claimant to no operation of motor vehicles for work purposes and no concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

(R. 41). Simply put, the ALJ didn't ignore the evidence, but also didn't believe plaintiff had to sleep during the day and explained why. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013)("If the ALJ disbelieved Schomas[about napping], he needed to explain that finding in order to build a logical bridge between the evidence and his conclusion."); *see also Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011)(". . . the ALJ made repeated references to Carter's drowsiness, trouble sleeping, dry mouth, and decreased libido, but concluded that these side effects did not prevent him from working.").

**B.**

Next, the plaintiff complains that two state agency reviewers failed to consider his schizophrenic disorder under Listing 12.03. [Dkt. #13, at 9-12]. First, the plaintiff points to the January 2021 review by psychologist David Voss. Dr. Voss noted schizophrenia to be a severe impairment (R. 80), but confined his listings analysis to Listing 12.04 for "Depressive, Bipolar, and Related Disorders." (R. 80-81). But, as he did make specific findings as to the paragraph B and C criteria of Listing 12.04, and those criteria are identical under Listing 12.03, see, e.g., 20 C.F.R. § 404, Subpart P, Appendix 1, listings 12.03(B)-(C), 12.04(B)-(C); *Bowman v. Comm'r of Social Security*, 683 F. App'x 367, 372 (6th Cir. 2017), there is nothing to be gained by repeating the exercise for both listings. Plaintiff has the same complaint regarding psychologist Howard Tin's review from March 2021, but like Dr. Voss, he too made specific findings under the paragraph B and C criteria which, again, are the same for Listing 12.03 and Listing 12.04. (R. 108-09). To the extent there was any error, then, it was harmless. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022).

**C.**

Finally, the plaintiff argues that the ALJ's failure to include the evidence from his previously denied claim for benefits "left the decision without substantial support in the evidence." [Dkt. #13, at 12]. The plaintiff filed a previous application for benefits back on June 12, 2017. That application was denied initially on December 14, 2017 and upon reconsideration on March 23, 2018. After an administrative hearing, the plaintiff's prior claim was then denied by an ALJ on July 25, 2019, and that decision became final when the Appeals Council denied review on April 17, 2020. (R. 32, 70). The plaintiff had 60 days to seek review of that final decision in federal district court, 42 U.S.C. § 405(g), but chose not to do so.

Before his hearing with the ALJ, the plaintiff's attorney wrote repeatedly to ask that that previous decision be re-opened and the evidence be reconsidered. (R. 321 ("Please also assure that prior filing is re-opened, reviewed, and any medical contained therein is associated with current filing."); R. 325 ("Please also assure that prior filing is re-opened, reviewed, and any medical contained therein is associated with current filing."); R. 336 ("I again request that the Claimant's prior filing be reviewed, reopened and that any medical evidence contained therein is associated with his already pending claim."); R. 337 ("Please also assure that prior filing is re-opened, reviewed, and any medical contained therein is associated with current filing.")).[4]

If a plaintiff can show "good cause"—such as new and material evidence that relates back to the prior period—and meets the applicable time limit, an ALJ can reopen a previous decision and readjudicate the prior period. See 20 C.F.R. §§ 404.988, 416.1488. But the plaintiff made no attempt to show good cause here, and the ALJ denied his request. That decision was within the ALJ's discretion, and the federal courts have no jurisdiction to review it unless a constitutional issue is involved, and none is raised here. *See Califano v. Sanders*, 430 U.S. 99, 107–08 (1977); *Diaz v. Chater*, 55 F.3d 300, 305 n.1 (7th Cir. 1995). If an ALJ does not reopen a prior decision, he or she adjudicates the subsequent period, but is bound by relevant factual findings made with respect to the prior period unless there is new and material evidence as to those findings. *Gay v. Comm'r of Social Security*, 520 F. App'x 354, 357–58 (6th Cir. 2013); 20 C.F.R. § 404.957(c)(1); HALLEX I-2-4-40, 2005 WL 1870458 (S.S.A. March 8, 2013). That's what happened here; the ALJ specifically

---

[4] Despite repeatedly and specifically asking that the previous decision be reopened, the plaintiff's attorney charges the ALJ with "mistaking" his requests as requests to reopen the previous decision. [Dkt. #13, at 12]. If there was any mistake, it seemed to have been on the part of counsel given the language of his requests.

13

explained that "any reference to evidence dated on or prior to July 25, 2019, is for historical purposes and shall not constitute a reopening of the prior decision." (R. 32).

If the plaintiff wanted to submit evidence from the previous period, he was not precluded from doing so. And, he clearly did so; over three-hundred pages of it. (R. 399-723). But the only evidence the plaintiff deems pertinent to his claims in his brief [Dkt. #13, at 6-7], was discussed by the ALJ and by the court here. If there was evidence from that previous period that the plaintiff thinks would establish disability – despite the four levels of administrative review of the previous application determining there was not – it was up to the plaintiff to come forward with it. *Kaplarevic v. Saul*, 3 F.4th 940, 943 (7th Cir. 2021); *Gedatus*, 994 F.3d at 905; *Karr*, 989 F.3d at 513. Plaintiff has been represented by counsel since June 24, 2020 (R. 124-129), and must be presumed to have made his best case for benefits. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir.2007).

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgement [Dkt. #17] is granted and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/21/23